UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANGIOSYSTEMS, INC., | ) |
| *Plaintiff*, | ) Case No. 1:15-cv-78 |
| | ) |
| v. | ) Judge Travis R. McDonough |
| | ) |
| WORLDWIDE INNOVATIONS & | ) Magistrate Judge Susan K. Lee |
| TECHNOLOGIES, INC. and JOHN | ) |
| CADWALADER, | ) |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION**

Before the Court is Defendants Worldwide Innovations & Technologies, Inc.'s and John Cadwalader's motion to dismiss or, alternatively, motion to transfer. (Doc. 17.) Also before the Court is the parties' joint motion to stay the Rule 26(f) conference and all other associated deadlines. (Doc 21.) For the reasons stated hereafter, Defendants' motion to dismiss or, alternatively, motion to transfer will be **GRANTED**, and the parties' joint motion to stay the Rule 26(f) conference and all other associated deadlines will be **DENIED AS MOOT**.

I. **BACKGROUND**

Plaintiff AngioSystems, Inc. ("AngioSystems") is a medical equipment manufacturing company headquartered in Ducktown, Tennessee. (Doc. 1, at 1.) Defendant Worldwide Innovations & Technologies, Inc. ("WIT") is a Kansas corporation and Defendant John Cadwalader is a Kansas resident employed by WIT. (*See id.* at 1–2.)

In 2003, AngioSystems and WIT entered into a license agreement, which granted AngioSystems the exclusive license to "make, have made, manufacture and convert radiation

attenuation material into Products" as that term is defined in the license agreement.[1] (*Id*. at 2–3; Doc. 17-1, at 2.) The license agreement specifies that the term of the agreement is ten years from its effective date but provides certain circumstances under which the parties can terminate the agreement. (Doc. 1, at 2; Doc. 17-1, at 4–5.) Cadwalader signed the license agreement on behalf of WIT in his capacity as Chief Executive Officer. (Doc. 17-1, at 8.)

AngioSystems alleges that, beginning in January 2008, WIT and Cadwalader began preparations to terminate the license agreement, including spending "hundreds of thousands of dollars to design and fabricate a machine to manufacture the product that is the subject of the license agreement." (Doc. 1, at 3.) Beginning in 2008, and trying to guard against termination of the license agreement, AngioSystems began asking WIT and Cadawalader whether they were planning on terminating the license agreement, whether they were trying to get someone else to manufacture the product that is the subject of the license agreement, and whether they were planning on taking manufacturing in house. (*Id*.) Each time he was asked, Cadwalader answered, "no." (*Id*.) In fact, Cadwalader repeatedly promised AngioSystems that he was going to extend the license agreement. (*Id*.) When AngioSystems asked Cadwalader these questions in 2009 and 2010, he again answered, "no." (*Id*. at 4–5.) Despite these representations and the terms of the license agreement, between 2008 and March 2010, WIT and Cadwalader manufactured over "20,000 Products" in breach of the license agreement. (*Id*.)

---

[1] AngioSystems did not attach a copy of the license agreement to its complaint, but WIT and Cadwalader did attach it to their motion to dismiss. The Court can consider the license agreement without converting WIT's and Cadwalader's motion to dismiss into a motion for summary judgment because AngioSystems refers to the license agreement in its complaint and the license agreement is central to at least some of the claims contained in its complaint. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

Based on these actions, AngioSystems initiated an arbitration proceeding (the "arbitration") against WIT as required by license agreement's arbitration provision.[2] (Doc. 1, at 5; Doc. 17-1, at 6–8.) The license agreement also includes a choice of law and forum selection provision that states: "This Agreement shall be governed and construed in accordance with the laws of Kansas. Any lawsuit brought by WIT or [AngioSystems] may only be brought in the judicial district of Kansas." (Doc. 17-1, at 6.)

Discovery in the arbitration was conducted under the terms of a protective order that prohibited the use of documents obtained for any other purpose than the arbitration. (Doc. 1 at 5.) As part of discovery, AngioSystems produced dealer price lists to WIT, which AngioSystems believes WIT disseminated to its distributors "to gain an unfair advantage in the market." (*Id.*)

Additionally, during the arbitration hearing, WIT attempted to submit a "new" expert report "in place of the report produced in discovery" and "did not use the expert report previously disclosed and on which [AngioSystems] deposed the expert." (*Id.*) According to AngioSystems, because WIT "produced severely flawed exhibits and a new expert report," WIT "agreed to pay for [AngioSystems'] fees and expenses incurred in deposing [WIT's] expert." (*Id.* at 5–6.) Despite this agreement, and despite the agreement being confirmed by the

---

[2] Specifically, the arbitration provision of the license agreement provides:

> All disputes, controversies or differences which may arise between the parties out of in relation to or in connection with any provisions of this Agreement or the performance, observation or breach of any such provision shall be finally settled by arbitration in accordance with the Rules of the American Arbitration Association. Such arbitration shall take place in St. Louis, MO before a single arbitrator residing in Missouri appointed from among the members of the National Panel of Arbitrators of the American Arbitration Association . . . .

(Doc. 17-1, at 6–7.)

arbitrator, WIT now claims it has no duty to pay AngioSystems' fees and costs incurred in deposing WIT's expert. (*Id*. at 6.)

AngioSystems initiated the present action on April 2, 2015. (*Id*.) AngioSystems' complaint asserts claims for: (1) breach of contract against WIT and Cadwalader based on their failure to pay fees and costs associated with deposing their expert as part of the arbitration proceeding; (2) fraud against Cadwalader based on his representations that WIT would extend and would not terminate the license agreement and that it was not planning to manufacture the products that were the subject of the license agreement; and (3) violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, based on WIT's and Cadwalader's dissemination of AngioSystems' dealer price lists. (*Id*. at 6–9.) WIT and Cadwalader have moved to dismiss AngioSystems' claims or, alternatively, to transfer the case to the United States District Court for the District of Kansas. (Doc. 17.)

## II.  STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court

construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

WIT and Cadwalader have moved to dismiss AngioSystems' claims under Rule 12(b)(6), arguing that its claims are subject to a valid and enforceable forum selection clause that requires litigating the claims in Kansas. Cadwalader separately argues that AngioSystems' fraud claim against him must be dismissed because it is barred by applicable statutes of limitations. Finally, WIT and Cadwalader alternatively argue that if AngioSystems' claims are not dismissed pursuant to Rule 12(b)(6), they should be dismissed under Rule 12(b)(3) for improper venue. (Doc. 17, at 4–11.)

### A. Forum Selection Clause

WIT and Cadwalader contend that AngioSystems' claims should be dismissed because the parties' license agreement is enforceable and requires AngioSystems to litigate its claims in Kansas. AngioSystems argues that dismissal is inappropriate because the license agreement's forum selection clause is inapplicable to its current claims against WIT and Cadwalader.

In a lawsuit where federal jurisdiction is based on diversity of the parties, "the enforceability of the forum selection clause is governed by federal law." *Wong v. Partygaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). On a motion to dismiss under Rule 12(b)(6) to enforce a forum selection clause, the Court "only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed."[3] *May v. Ticketmaster Entm't, LLC*, No. 3:10-CV00760, 2010 WL 4024257, at *4 (M.D. Tenn. Oct. 13, 2010) (citing *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365 (6th Cir. 2008)).

Here, the Court finds that the license agreement's forum selection clause is inapplicable to AngioSystems' claims for breach of contract and misappropriation of trade secrets. The forum selection clause at issue in this case is part of a license agreement entered into between AngioSystems and WIT. Specifically, the forum selection clause provides: "This Agreement shall be governed and construed in accordance with the laws of Kansas. Any lawsuit brought by WIT or [AngioSystems] may only be brought in the judicial district of Kansas." (Doc. 17-1, at 6.) The sentence directing that any lawsuit brought by WIT or AngioSystems "may only be brought in in the judicial district of Kansas" immediately follows a sentence mandating that the

---

[3] In this case, AngioSystems does not dispute the enforceability of the forum selection clause, and nothing indicates that: (1) the forum selection clause was obtained by fraud; (2) that a Kansas court would be unable to effectively handle the suit, or (3) that forcing AngioSystems to litigate in Kansas would be so seriously inconvenient as to be unjust. *See Wong*, 589 F.3d at 828; *May*, 2010 WL 4024257, at *4.

license agreement shall be governed and construed in accordance with Kansas law, thereby indicating that the forum selection clause applies to disputes arising out of the parties' contractual relationship under the license agreement.  Contrary to WIT's and Cadwalader's arguments otherwise, AngioSystems' claims for breach of contract and misappropriation of trade secrets do not arise out the parties' contractual relationship under the license agreement; rather, AngioSystems' claims for breach of contract and misappropriation of trade secrets are the result of WIT's alleged conduct during the course of the parties' previous arbitration proceeding.  AngioSystems' allegations that WIT allegedly breached an agreement—separate from the license agreement—to pay expenses related to an expert's deposition during the course of arbitration and has failed to do so, and its allegations that WIT misappropriated trade secrets learned during discovery conducted as part of the arbitration are too far removed from the license agreement to conclude that its forum selection clause applies.  Accordingly, the license agreement's forum selection clause is not applicable to AngioSystems' claims for breach of contract and misappropriation of trade secrets.

AngioSystems' fraud claim against Cadawalder, however, falls within the scope of the license agreement's forum selection clause.  Tort claims can be encompassed by a contractual forum selection clause if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if the tort claims involve the same operative facts as a parallel claim for breach of contract. *See Wireless Properties, LLC v. Crown Castle Int'l Corp.*, 2011 WL 3420734, at *5 (E.D. Tenn. Aug. 4, 2011); *Hasler Aviation, LLC. v. Aircenter, Inc.*, 2007 WL 2463283, at *5 (E.D. Tenn. Aug. 27, 2007); *see also Travelers Property Casualty Co. of Am. v. Centimark, Corp.*, 2005 WL 1038842, at *2-*3 (S.D. Ohio May 3, 2005).

Here, AngioSystems' fraud claim against Cadwalader is encompassed by the license agreement's forum selection clause, because such a claim necessarily arises from the existence of the license agreement, which is the source of any duty Cadwalader allegedly owed to AngioSystems. Cadwalader signed the license agreement in his capacity as Chief Executive Officer of WIT (Doc. 17-1, at 8), and, as alleged in AngioSystems' complaint, committed fraud by misrepresenting that WIT would extend and would not terminate the license agreement and that it was not planning to manufacture, or have other third parties manufacture, the products that were the subject of the license agreement. (Doc. 1, at 7–8.) Without the license agreement, there is no basis for AngioSystems to assert that Cadwalader fraudulently misrepresented that WIT would extend and would not terminate the license agreement and that it was not planning to manufacture, or have other third parties manufacture, the products that were the subject of the license agreement. Because AngioSystems' fraud claim against Cadwalader depends on the existence of the license agreement, such a claim falls within the scope of the license agreement's forum selection clause, which mandates that "[a]ny lawsuit brought by WIT or [AngioSystems] may only be brought in the judicial district of Kansas." Accordingly, WIT's and Cadwalader's motion to dismiss AngioSystems' fraud claim against Cadwalader will be **GRANTED** and **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Statute of Limitations

Because AngioSystems' fraud claim against Cadwalader is subject to the license agreement's forum selection clause and will be dismissed without prejudice, the Court need not determine whether AngioSystems' fraud claim is barred by the applicable statute of limitations.

### C. Improper Venue

WIT and Cadwalader also argue that AngioSystems' claims should be dismissed under Rule 12(b)(3) for improper venue. (Doc. 17, at 10.) WIT and Cadwalader specifically contend that venue is improper as to AngioSystems' claims for breach of contract or misappropriation of trade secrets because none of the events or omissions giving rise to those actions occurred in the Eastern District of Tennessee. In its response to WIT's and Cadwalader's motion, AngioSystems argues venue is proper because its "claims involve damage or diminution of value of property in Tennessee, including, without limitation, [its] purchase of machinery designed specifically to manufacture [products under the license agreement] and [its] trade secrets."[4] (Doc. 18, at 7.)

Under Rule 12(b)(3), a case may be dismissed for improper venue if the case was not filed in a venue prescribed by 28 U.S.C. § 1391. *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 536 (6th Cir. 2002); *Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 691 (S.D. Ohio 2013). Under 28 U.S.C. § 1391, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

On a motion to dismiss for improper venue, the plaintiff bears the burden of proving venue is proper. *Gone to the Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 537 (W.D.

---

[4] AngioSystems also argues that venue is proper in the Eastern District of Tennessee because the alleged misrepresentations made by Cadwalader were made to officers of AngioSystems while they were in Tennessee and were intended to induce reliance and action by AngioSystems in Tennessee. (Doc. 18, at 7.) Because AngioSystems' fraud claim against Cadwalader is subject to the license agreement's forum selection clause and will be dismissed without prejudice, any events or omissions related to Cadwalader's alleged statements fail to provide a basis for venue as to AngioSystems' claims for breach of contract and misappropriation of trade secrets.

9

Tenn. 2006). In assessing whether venue is proper, courts determine whether the selected forum bears a "substantial connection" to the plaintiff's claim. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). A court "may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id*.

AngioSystems' generic and unsupported assertion that its claims involve damage or diminution of value of property in Tennessee is insufficient to meet its burden of proving that venue is proper in the Eastern District of Tennessee. Although AngioSystems states that it suffered damages because it purchased machinery specifically for manufacture of products under the license agreement, its purchase of machinery is specifically tied to its fraud claim against Cadwalader and unrelated to its claims for breach of contract and misappropriation of trade secrets claims resulting from the parties' arbitration. Because AngioSystems' fraud claim against Cadwalader is subject to the license agreement's forum selection clause and will be dismissed without prejudice, AngioSystems' purchase of machinery as a result of Cadwalader's alleged misrepresentations fails to establish that a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of Tennessee or that a property that is the subject of the action is situated in the Eastern District of Tennessee. AngioSystems' assertion that its unspecified "trade secrets" are located in Tennessee and have been damaged also fails to prove that venue is proper in the Eastern District of Tennessee. AngioSystems' complaint only alleges misappropriation of its price list, and AngioSystems fails to demonstrate that its price list is located in Tennessee or constitutes a substantial part of property that is the subject of its misappropriation of trade secrets claim against WIT and Cadwalader.

AngioSystems' allegations in its complaint also fail to establish that venue is proper in the Eastern District of Tennessee. AngioSystems has alleged that WIT and Cadwalader

"promised to pay [AngioSystems'] fees and expenses incurred in taking Defendants' expert's deposition in exchange for extensions of time to correct its exhibits and evidence at trial" and that WIT and Cadwalader "breached their agreement by failing to pay [AngioSystems'] fees and costs." (Doc. 1, at 6.) For its misappropriation of trade secrets claim, AngioSystems alleges that WIT and Cadwalader obtained AngioSystems' price list through discovery in the arbitration and violated a protective order entered in the arbitration by intentionally disseminating the price list to its distributors to give them an unfair advantage. None of these allegations suggests that the arbitration occurred in the Eastern District of Tennessee, that a substantial part of the events or omissions giving rise to AngioSystems' breach of contract or misappropriation of trade secrets claims occurred in or are substantially connected to the Eastern District of Tennessee, or that property that is the subject of the action is situated in the Eastern District of Tennessee.

AngioSystems has failed to carry its burden of proving that a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of Tennessee or that a property that is the subject of the action is situated in the Eastern District of Tennessee. Accordingly, AngioSystems' claims for breach of contract and misappropriation of trade secrets will be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

### IV. CONCLUSION

For the reasons stated herein, WIT's and Cadwalader's motion to dismiss (Doc. 17) is hereby **GRANTED**. AngioSystems' claim for fraud against Cadwalader is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. AngioSystems' claims against WIT and Cadwalader for breach of contract and misappropriation of trade secrets are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(3) of the

Federal Rules of Civil Procedure.  The parties' joint motion to stay the Rule 26(f) conference and all other associated deadlines (Doc. 21) is hereby **DENIED AS MOOT**.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**